

U.S. Department of Justice

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C.  20530*

<u>Via USAFx and email</u>                                   March 3, 2021

Tony Miles
*Attorney for Defendant McKay*

      Re:   *United States v. Michael McKay,* 21-cr-7 (JDB)

Dear Counsel:

      I am writing to provide you with certain information regarding the D.C. Department of Forensic Sciences (DFS). To the extent that the D.C. Department of Forensic Sciences (DFS) played any role in this case, we are further writing to provide you with the following information related to DFS, some of which has already been provided to you.  This information falls broadly into three categories:  (1) materials related to the government's investigation of alleged misconduct by employees of DFS and the Metropolitan Police Department (MPD); (2) correspondence related to the government's investigation and the government's subsequent request that DFS participate in an outside audit process; and (3) materials related to a review and audit of selected casework of the DFS Firearms Examination Unit (FEU) and overall quality assurance process.

      The DFS materials are available for download from USAFx at "DFS Disclosures,"[1] a USAFx folder to which you have been invited. Please note that the folders on USAFx are organized by topic and a copy of the index is also available on USAFx. If the government comes into possession of additional materials related to DFS after the date of this letter, the government may make those materials accessible to you by uploading the materials to USAFx and adding them to the index[2] available on USAFx.  The index reflects the date that the materials were uploaded to USAFx. Please note that Sections 1 – 3 below describe in greater detail the materials that you have been provided as of the date of this discovery letter.

---

[1]  Preferably using a Chrome browser, please navigate to the following link: https://usafx.app.box.com/folder/123205578212

[2] As indicated in the index, the government also has in its' possession items related to DFS's Quality Control Assessment Reports ("QCARS"). As QCARS contain information implicated by federal privacy law, the undersigned will reach out to counsel to resolve this matter with a protective order at a later date.

### 1. **Materials Related to the Government's Investigation of Alleged Misconduct**

In September 2019, the United States became aware of allegations of misconduct by personnel at DFS[3] and MPD, including DFS's former Acting Deputy Director Karen Wiggins[4]; Unit Manager Jonathan Pope of the DFS Firearms Examination Unit (FEU); FEU Firearms Examiner Steven Chase; other DFS employees who are or were affiliated with the FEU; and Unit Manager Alesia Wheeler-Moore of the DFS Crime Scene Sciences Unit (CSSU), who previously served as a lieutenant in MPD's Crime Scene Investigations Division (CSID). As described more fully in the materials being provided, the allegations included concerns about DFS operations related to the firearms examination and verification procedures used by the FEU during April and May 2017, in particular, and that DFS and MPD officials whitewashed the allegations and concealed them from the United States Attorney's Office (USAO).

On October 8, 2019, in partnership with the D.C. Office of the Inspector General (DC-OIG) and the Federal Bureau of Investigation (FBI), the Fraud and Public Corruption Section (FPC) of the USAO's Criminal Division initiated a formal investigation into the allegations. In the course of its investigation, the government conducted interviews of more than a dozen people—some more than once—and obtained documents and e-mails from current and former DFS and USAO personnel. The government concluded its investigation on January 31, 2020, and, on the same day, sent a cover letter and 31-page report of its findings and recommendations for additional inquiry and corrective action to DC-OIG (the "January 31, 2020, Report of Referral").

---

[3] Except as explained in footnote 2, to the best of the government's knowledge, during most times relevant to the government's investigation, DFS's publicly available organizational chart reflected that the Deputy Director reported to the Director. During those times, the Deputy Director oversaw three divisions: the Forensic Science Laboratory Division (FSLD), the Crime Scene Sciences Division (CSSD), and the Public Health Laboratory Division (PHLD). The FSLD, in turn, contained five units: the Forensic Biology Unit (FBU), the Firearms Examination Unit (FEU), the Latent Fingerprint Unit (LFU), the Digital Evidence Unit (DEU), and the Materials Analysis Unit (MAU). The Crime Scene Sciences Division (CSSD) contained two units: the Crime Scene Sciences Unit (CSSU) and the Central Evidence Unit (CEU). The PHLD also had five units: the Accessioning Unit (AU); the Bioterrorism & Molecular Diagnostics Unit (BMD), the Biomonitoring & Analytical Chemistry Unit (BAC), the Microbiology Unit (MU), and the Immunology & Virology Unit (IVU).

[4] Former DFS Acting Deputy Director Wiggins retired on December 29, 2019. It is believed that Wiggins assumed the role of Acting Deputy Director in or about June 2019; became the Director of the FSLD at some point in 2015; and, before that, was hired in 2013 to be the DFS Deputy Director of Quality Assurance. Former Acting Deputy Director Wiggins generally is believed to have had oversight responsibilities over the FSLD, CSSD, and PHLD, and their respective units. It is the government's understanding that, although Wiggins concurrently held the position of Director of the FSLD until November 10, 2019, there also was an Acting Director of the FSLD. On November 10, 2019, the Acting Director of the FSLD became its permanent director. The Director of the FSLD—who was not a subject of the government's investigation—generally is believed to have oversight roles of the FBU, FEU, LFU, DEU, and MAU.

It is the government's understanding that following the Acting Deputy Director Wiggins's retirement, DFS's Director assumed responsibility for the Deputy Director's portfolio pending the selection of Wiggins's replacement. Additionally, the government believes that DFS moved the DEU outside the FSLD into a new Cyber Operations Section (COS) joined with the Forensic Technology Unit (FTU). It also appears that DFS eliminated the MAU and made additional organizational modifications related to the PHLD that are not relevant to this disclosure.

On April 23, 2020, the USAO, along with the Office of Attorney General for the District of Columbia (OAG), formally notified DFS that the government has retained independent experts to audit DFS's policies and practices focusing, in particular, on the FEU and DFS's quality assurance program. Although the government is keeping DC-OIG informed of the progress and findings of its audit, the USAO does not anticipate participating directly in the DC-OIG administrative investigation, which is expected to be conducted independently from the USAO and OAG.

On May 4, 2020, the USAO contacted DC-OIG to determine the current status of the USAO's referral. DC-OIG informed the USAO that, on May 5, 2020, it closed its criminal investigation and opened a new administrative case based on the USAO's referral.

The government is providing a copy of the January 31, 2020, Report of Referral along with the primary source materials related to its investigation and an index of the primary source materials.

In connection with its investigation, the government obtained a total of approximately 600,000 pages of e-mails and attachments (after removing collected duplicates) from the accounts of five current and former DFS employees. The time period involved in the collection generally ranged between January 2016 and October 2019, although the exact time period collected for each employee may differ. These employees whose e-mails were collected are Karen Wiggins, Jessica Beyer, Jonathan Pope, Deion Christophe, and Steven Chase. This collection is bulk in nature, is not limited to e-mails discussing the events underlying the matter under investigation, and may contain sensitive personal information. At this time, the government is providing only those e-mails listed in the index of the primary source materials that accompanied the January 31, 2020, Report of Referral – i.e., the e-mails which were identified through applicable searches as relevant to the criminal investigation.

During the course of its investigation, the United States also became aware of allegations that, after the USAO notified DFS in 2017 that it no longer was willing to sponsor a DFS crime scene scientist as an affiant or witness ("do not sponsor"), DFS's former General Counsel felt pressure from DFS's Director, Dr. Jenifer Smith, to avoid other situations in which the USAO would not sponsor DFS employees by lessening the discipline imposed on DFS employees. On or about August 18, 2017, the USAO notified DFS that it no longer was willing to sponsor the crime scene scientist because of a disciplinary matter in which DFS found both that the employee made a false statement to a supervisor regarding the employee's processing of a firearm and that the employee repeated that false statement during an administrative investigation by DFS into the matter. On or about September 7, 2017, after learning that the employee still was collecting and processing evidence, the USAO explained to DFS that permitting the employee to do so created a risk that the United States may not be able to use the evidence that the employee collected at trial.[5]

---

[5] At or about this time, DFS's then-General Counsel expressed concern to AUSA Ambrosino about Director Smith's decision to use the employee in an evidence collection and processing role. The then-General Counsel further explained that she feared losing her bar license if she followed this directive and she told AUSA Ambrosino that she brought this issue to the attention of the Mayor's Office of Legal Counsel (MOLC). Ultimately, it appears that DFS stopped using the employee to collect evidence, and that the employee is no longer employed by DFS.

Subsequently, on at least two separate occasions in 2017, including during a meeting on December 4, 2017, Director Smith sought an explanation for and reconsideration of the USAO's decision not to sponsor the crime scene scientist.[6] In particular, Director Smith requested that the USAO give the employee another chance so that the employee could continue to testify in criminal cases prosecuted by the USAO. After considering Director Smith's arguments, the USAO did not change the employee's designation. After the USAO declined to change its decision about the employee, DFS's then-General Counsel told AUSA Michael Ambrosino, Special Counsel for DNA and Forensic Evidence Litigation, that Director Smith criticized her for informing the USAO about the employee's conduct, including the employee's false statements.

Although, during her interview, DFS's former General Counsel generally recalled documenting employee issues to lessen the discipline to avoid the USAO's do not sponsor designation, she was unable to identify any specific instances in which she had done so and stated that she never would change the facts of an internal investigation and never found Director Smith's actions or requests to be unethical.

Since the former General Counsel's departure from DFS on or about November 1, 2019, DFS has notified the USAO of a number of disciplinary matters that DFS had not previously disclosed or identified for disclosure in response to requests for Giglio information by the USAO.[7] DFS imposed discipline in those matters between February 2014 and July 2019, in many instances for safety and health violations and failure/refusal to follow instructions. DFS has indicated that it is reviewing why these matters were not previously disclosed or identified for disclosure, but believes it may have been due to a prior interpretation of DFS's Giglio obligations as it relates to confidential employee information that does not bear on veracity.

Also, most recently, in exhibits accompanying a letter to our office dated May 6, 2020 (identified below), DFS produced a two page email that it described as containing its former General Counsel's "implicit direction to her subordinate to change [a] 'False Statements/ Records" disciplinary charge because it is a 'tough one to shake.'" *See* 2020-05-06 DFS Letter to USAO re Alleged Misconduct, at Exhibit 7.1

### 2. Correspondence Related to the Government's Investigation and Request for an Outside Audit

The government is also providing the following correspondence related to the government's investigation and the government's subsequent request that DFS participate in an outside audit process:

---

[6] The United States also was notified in November 2017 that Director Smith was angry about the USAO's decision on or about February 2017 not to sponsor DFS Firearms Examiner Daniel Barrett, who retired after DFS discovered errors in his examinations following a failed proficiency test and the discovery of casework errors. To the best of the government's knowledge, at the time material to FPC's investigation, the only two DFS employees whom the USAO had stated an unwillingness to sponsor were the crime scene scientist and former FEU Firearms Examiner Barrett.

[7] As of January 31, 2020, DFS had notified the USAO of 21 such matters for 17 DFS employees. It is the United States' understanding that, barring unforeseen circumstances, DFS has completed its review for additional information potentially responsive to prior USAO Giglio requests.

<u>2020-02-13 Letter from Daniel Barrett to AUSA Michael Ambrosino re DFS FEU.pdf</u>
      On February 13, 2020, former DFS Firearms Examiner Daniel Barrett sent a letter to AUSA Michael Ambrosino making allegations regarding FEU.

<u>Deputy Mayor Memo 2.14.2020 short version.pdf</u>
      On February 14, 2020, DFS sent a letter to the deputy mayor regarding the January 31, 2020, Report of Referral responding to its findings.[8]

<u>2020-04-23 Joint USAO-OAG Letter to Dr. Jenifer Smith re DFS Audit (with Attachments).pdf</u>
      On April 23, 2020, the USAO and OAG sent a joint letter to DFS seeking DFS's cooperation in an independent audit of DFS that OAG and USAO are sponsoring.

<u>2020-05-19 DFS Response to 2020-04-23 Joint USAO-OAG Letter re DFS Audit.pdf</u>
      On May 19, 2020, DFS responded to the April 23, 2020, joint USAO-OAG letter by declining to participate in the independent audit and announcing its intention to participate in an audit undertaken by its accrediting body, the American National Standards Institute's (ANSI) National Accreditation Board (ANAB), and a review undertaken by the Science Advisory Board (SAB).

<u>2020-05-06 DFS Letter to USAO re Alleged Misconduct.pdf</u>
      On May 6, 2020, DFS sent a letter, with accompanying exhibits, to the USAO regarding the January 31, 2020, Report of Referral and related matters, including accusations of misconduct against its former General Counsel and USAO employees.

<u>2020-06-15 USAO Response to 2020-05-06 DFS Letter.pdf</u>
      On June 15, 2020, the USAO wrote to the Chief Judges of the Superior and U.S. District Courts to update the courts and respond to DFS's May 2020 accusations, attaching the April 23, 2020, letter (and accompanying attachments) and the May 19, 2020, letter as Attachments 1 and 2, respectively.

### 3. **Materials Related to a Review and Audit of Selected Casework of the DFS Firearms Examination Unit**

      Beginning April 6, 2020, the USAO and OAG asked a team of independent auditors (Bruce Budowle, James Carroll, and Todd Weller) to initiate an audit of DFS. The auditors were directed to investigate the following: (1) conduct disclosed by DFS to USAO in 2016-2017, including a failed proficiency exam and multiple casework errors (not caught during the verification process); (2) conduct which appears to have been intentionally withheld by DFS management from USAO and OAG, including a failed proficiency exam, policy deviations, and an effort by DFS management to pre-determine the outcome of an investigation into conduct involving policy deviations, at minimum; and (3) discovery in January 2020, through analysis performed by four independently retained firearms experts, that four DFS firearms examiners erroneously connected

---

[8] In March 2020, DFS provided a copy of this letter to the USAO. The file name of the PDF that DFS provided to the USAO was "Deputy Mayor Memo 2.14.2020 short version"; the USAO is not aware of a longer letter or memo.

two homicides by concluding the same gun fired shell casings recovered from both homicide scenes.[9]

On May 21, 2020, the auditors issued an Interim Report, and on June 4, 2020, an Addendum to that report. On July 29, 2020, the auditors submitted a proposed audit plan. On August 9, 2020, the auditors issued a second Interim Report.

As part of their work, the auditors reviewed a variety of source materials including the underlying reports and various correspondence. The auditors also conducted interviews of the following former DFS employees: Jessica Beyer, Deion Christophe, Chris Coleman, Brittany Graham, Travis Spinder, Alicia Sandstrom (Vallario), and Michael Mulderig.

The government has provided you the following via the USAFx DFS Disclosures folder: the May 21, 2020, Interim Report and accompanying attachments; the June 4, 2020, Addendum and accompanying attachments; the July 29, 2020, proposed audit plan; the August 9, 2020 Second Interim Report; a January 17, 2020 USAO letter to DFS; DFS's letters to the USAO dated January 22, 2020, January 23, 2020, and May 22, 2020; the underlying reports and source materials reviewed by the auditors; and summaries of the interviews, a video recording of the auditors' first interview of Travis Spinder, and materials that the interviewees provided to the auditors.

If you have any questions, or need assistance with USAFx, please contact the undersigned Assistant United States Attorney.

                                                  Sincerely,

                                                  Channing D. Phillips
                                                  Acting United States Attorney

                         By:     */s/ Nicole McClain*
                                  Nicole McClain
                                  Assistant United States Attorney

Enclosures

---

[9] This third category refers to the case *United States v. Rondell McLeod*, 2017 CF1 9869, currently pending before Judge Edelman. In *McLeod*, the United States is engaged in ongoing litigation regarding at least four DFS firearms examiners making false identifications of ballistic evidence. On May 1, 2020, the defendant filed a motion to dismiss the indictment, arguing that the government placed false ballistics evidence before the grand jury. On July 15, 2020, the government issued a subpoena to DFS requesting documents concerning those false identifications as well as DFS's subsequent review of those identifications. DFS has retained outside counsel and is claiming that certain documents responsive to the subpoena are protected by an evidentiary privilege. Judge Edelman held a hearing on this issue on August 21, 2020 and set a briefing schedule to resolve DFS's privilege claims.